**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLENE MCPHERSON** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 16-1469** |
| | : | |
| **CAROLYN W. COLVIN** | : | |

**<u>MEMORANDUM</u>**

**KEARNEY, J.**                                                                                   **September 28, 2016**

Persons suffering from obesity and seeking disability benefits due to alleged inability to work must identify the cumulative effect of obesity on their other impairments precluding their ability to work.   An Administrative Law Judge evaluating a claimant's appeal from the Social Security Commissioner's denial of benefits through a hypothetical to a Vocational Expert must fully account for the claimant's deficiencies in concentration, persistence and pace. When, as here, the claimant fails to identify the cumulative effect of her obesity on her other impairments, we affirm the Administrative Law Judge's findings.   But, as here, we must remand for further hearings when the Administrative Law Judge's hypothetical to the Vocational Expert did not account for the claimant's moderate deficiencies in concentration, persistence and pace.   In the accompanying Order, we remand to allow findings based upon a renewed hypothetical in a promptly scheduled hearing upon claimant's application now pending over four years.

**I.      Background**

Charlene McPherson applied for Social Security disability benefits on April 30, 2012, claiming disability based on diagnoses of affective disorders (including depression), migraines, and disorders relating to her knee and ankles.[1] The Social Security Administration denied her claim. She filed a timely request for a hearing. At the December 4, 2013 hearing, McPherson

testified she is 5'9" and weighs 330 pounds.[2] When asked why she feels unable to work, McPherson testified she has "mental issues," including depression and temptations to harm herself.[3] McPherson also identified right knee and left ankle problems affecting her ability to stand.[4] She explained her weight causes her back pain and increases the pain in her ankle and knees.[5]

At the hearing, the Administrative Law Judge Jennifer M. Lash asked vocational expert Sherry Kristal-Turetsky to identify occupations available for a hypothetical person the same age and education as McPherson, with no past work, who could: 1) perform routine, repetitive tasks; 2) in a low stress environment (defined as no frequent independent decision making required and no frequent changes in the work setting); 3) with no public interaction and occasional interaction with coworkers and supervisors.[6] The vocational expert identified three available occupations: laminator, compact assembler, and small product assembler.[7]

On April 17, 2014, ALJ Lash found McPherson not disabled under the Social Security Act.[8] ALJ Lash concluded McPherson has several severe impairments, including obesity, a knee disorder, disorders of the back, and affective disorders.[9] The ALJ determined, however, McPherson does not have an impairment or combination of impairments meeting or equaling the severity of any listed impairments in the Social Security rulings.[10] The ALJ acknowledged obesity in general, when considered with other impairments, may constitute an impairment equaling the requirements of a listing.[11] The ALJ explained "obesity has been considered in this analysis, but the record remains insufficient to establish that the claimant has an impairment(s) which meets or equals a listing."[12] The ALJ mentioned McPherson's diagnosis of obesity later in her decision,[13] but did not further analyze the cumulative effect of McPherson's obesity on her

severe impairments. The ALJ also found McPherson had "moderate" deficiencies in concentration, persistence, and pace.[14]

ALJ Lash concluded McPherson has the residual functional capacity to perform light work, with certain restrictions, including only occasional crouching and crawling.[15] She explained, "No treating or examining source has submitted opinion evidence outlining specific work-related limitations that are more restrictive."[16] The ALJ gave considerable weight to the medical opinion of state agency physician Anne Zaydon, MD,[17] who diagnosed McPherson with morbid obesity and migraines.[18] Dr. Zaydon found McPherson's morbid obesity renders her unable to crouch or crawl,[19] but the ALJ found these limitations unsupported by the physical examination findings and the record as a whole.[20] The ALJ also found McPherson's statements regarding "the intensity, persistence, and limiting effects of [her] symptoms" were not credible because they were internally inconsistent and inconsistent with the record.[21]

ALJ Lash gave considerable weight to the opinion of April Colbert, Psy.D.,[22] who diagnosed McPherson with being overweight and having major depressive disorder and posttraumatic stress disorder.[23] The ALJ accepted the medical opinion of state agency psychologist Francis Murphy, Ph.D., but gave it less weight than the opinion of Dr. Colbert.[24] Dr. Murphy diagnosed McPherson with obesity, disorders of the muscle, ligament, and fascia, and affective disorders.[25] The ALJ found the medical opinions found in McPherson's treatment records were consistent with the ability to perform a range of unskilled work.[26]

McPherson requested review of the ALJ's decision, but the Appeals Council denied the request. Having exhausted her administrative remedies, McPherson filed a Petition for Review challenging the denial of her disability claim.

3

## II.    Analysis

Ms. McPherson argues: 1) ALJ Lash failed to properly evaluate the effects of her obesity on her physical and mental functioning during steps three through five of its analysis;[27] 2) ALJ Lash erred in relying upon the testimony of the vocational expert because the ALJ's hypothetical to the vocational expert did not adequately account for her deficiencies in concentration, persistence, and pace;[28] and 3) substantial evidence does not support ALJ Lash's finding of a significant number of jobs in the local and national economy available to McPherson.[29]

The ALJ applies a five-step sequential evaluation process to determine if a claimant has a disability.[30] At step one, the claimant must prove she is not working at a "substantial gainful activity."[31] At step two, the claimant must prove she has a "severe impairment."[32] At step three, the ALJ must determine whether the claimant's impairment matches, or is equivalent to, one of the listed impairments.[33] If the claimant's impairment matches or equals a listing, he is presumed disabled.[34] If the impairment does not match or equal a listing, then at step four, the claimant must show he does not have the "residual functional capacity" to perform his previous work.[35] At step five, the Social Security Administration must determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.[36] The burden is on the Commissioner at step five.[37]

We review the ALJ's findings of fact "under the deferential 'substantial evidence' standard."[38] "We must affirm the ALJ so long as his conclusions are supported by substantial evidence."[39] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[40] "It is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'"[41] "We review the record as a whole to determine whether substantial evidence supports a factual finding."[42]

### a. ALJ Lash did not adequately analyze the cumulative effect of Ms. McPherson's obesity on her other impairments, but this error does not require remand.

Ms. McPherson argues the ALJ failed to adequately analyze the adverse effect of her obesity on her other severe impairments, including her knee pain, back pain, and depression.[43] Social Security Ruling 02-1p provides guidance on evaluating obesity in a social security claim.[44] "Obesity is a risk factor that increases an individual's chances of developing impairments in most body systems."[45] An adjudicator will "find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing."[46] The ruling explains "obesity may increase the severity of coexisting or related impairments," including musculoskeletal and mental disorders such as depression.[47] The ALJ must "consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity."[48]

The ALJ's analysis of the cumulative effects of obesity and other impairments must be sufficient to enable meaningful judicial review.[49] In *Diaz*, an ALJ found Diaz had multiple severe impairments, including obesity.[50] At step three, the ALJ commented on Diaz's individual impairments, but did not mention her obesity.[51] Instead, the ALJ cited to reports by doctors aware of Diaz's obesity.[52] Diaz argued substantial evidence did not support the ALJ's step three ruling because the ALJ did not consider Diaz's obesity in relation to her joint dysfunction.[53] Judge Chesler of the District Court held the ALJ's citation to reports by doctors who were aware of Diaz's obesity demonstrated the ALJ properly considered Diaz's obesity.[54]

Our Court of Appeals remanded, explaining the ALJ failed to analyze the cumulative impact of Diaz's obesity and other impairments on her functional capabilities, making

meaningful review impossible.[55] As a matter of "common sense, if not medical diagnosis," Diaz's obesity would have exacerbated her joint dysfunction, but the ALJ failed to discuss the impact of obesity on Diaz's joint dysfunction.[56] Our Court of Appeals explained, "conclusory statements that a condition does not constitute the medical equivalent of a listed impairment are insufficient. The ALJ must provide a 'discussion of the evidence' and an 'explanation of reasoning' for his conclusion sufficient to enable meaningful judicial review."[57]

District courts following *Diaz* take different approaches to resolving an ALJ's lack of meaningful analysis regarding a claimant's obesity. Some courts find the lack of analysis dispositive. For example, in *Page v. Colvin*, after categorizing Page's obesity as a severe impairment, the ALJ stated at step three he "considered the claimant's obesity both by itself and in conjunction with his other impairments."[58] Judge Ambrose found this one sentence analysis insufficient, explaining the lack of "explicit analysis of the cumulative impact of Page's obesity and the other impairments of his functional ability."[59] "A mere acknowledgement of an obligation to assess Page's obesity alone and in conjunction with other severe impairments without actual further analysis is legally insufficient."[60]

Similarly, in *Ellis v. Astrue*, after categorizing Ellis' obesity as severe impairment, the ALJ's only mention of obesity consisted of acknowledging his obligation to assess the cumulative effects of obesity with other impairments at all steps of the process.[61] The ALJ did not explain how Ellis' obesity affected her knee disorder and ability to walk and stand.[62] Magistrate Judge Rice found it "legally insufficient to merely acknowledge an obligation to assess Ellis' obesity without further discussion or analysis."[63]

In *Jainlett v. Colvin*, the ALJ failed to mention obesity at step three after determining obesity is one of Jainlett's severe impairments.[64] At step four, the ALJ mentioned "Ms. Jainlett

has obesity and several other medical conditions that reasonably impose limitations on her ability to work."[65] The remainder of the ALJ's opinion did not mention Jainlett's obesity.[66] Magistrate Judge Lloret recommended remand because Jainlett's other severe impairments—including spinal disorder and arthritis—"would seem to have been exacerbated by obesity . . . [a]s a matter of common sense, if not medical diagnosis."[67]

Other courts, distinguishing *Diaz*, oblige the claimant to identify record evidence showing the exacerbated effect obesity had on an impairment. In *Brown v. Astrue*, the ALJ determined Brown's obesity constituted a severe impairment and then summarily stated he considered the cumulative effects of Brown's obesity during each step.[68] Brown argued the ALJ failed to meaningfully consider the cumulative effects of her obesity with her other impairments.[69] Judge Robinson explained Brown did not specify evidence purportedly omitted by the ALJ.[70] Record evidence undermined Brown's assertion she could not perform daily living tasks.[71] Additionally, at step four, the ALJ cited medical testimony explaining briefly how Brown's obesity aggravated her condition.[72] Judge Robinson found Brown's "general assertion that her weight contributes to her loss of functioning" did not warrant remand because the ALJ clearly relied on voluminous medical evidence when determining Brown's impairments.[73]

Similarly, in *Neff v. Astrue*, the ALJ determined Neff's obesity constituted a severe impairment.[74] The ALJ acknowledged the general adverse impact of obesity on other impairments.[75] The ALJ stated she considered obesity's effect on Neff's other impairments and rejected obesity as causing Neff's alleged physical limitations.[76] "Unlike the claimant in *Diaz*, Neff does not provide objective evidence of [impairments] that would obviously be worsened by obesity."[77]

7

Judge Andrews likened this case to *Brown*, where the claimant failed to identify evidence demonstrating obesity worsened her other impairments.[78] The simple fact of Neff's obesity did not necessarily justify the conclusion her obesity worsened her other symptoms.[79] "Were the ALJ to independently assume that Neff's obesity had a significant detrimental effect on her symptoms, the ALJ would be substituting her opinion for that of the medical experts, which she cannot do."[80] Additionally, record evidence undermined Neff's assertion as to the adverse effect of her obesity.[81] Judge Andrews concluded it could not "remand the ALJ's decision based on the failure to confront evidence that does not exist."

Similarly, in *Lugo v. Colvin*, the ALJ found Lugo's obesity to be a severe impairment and summarily stated obesity must be considered in conjunction with other impairments.[82] The ALJ relied on treatment records which referred to Lugo's obesity, but the ALJ did not discuss Lugo's obesity.[83] Lugo argued the ALJ failed to properly consider the effect of her obesity on her other severe impairments, including her diabetes and spine condition.[84] Magistrate Judge Heffley recommended remand on the basis "the ALJ failed to properly address Lugo's obesity."[85] Judge Heffley explained the ALJ noted generally his obligation to consider obesity, but failed to meaningfully address any effect Lugo's obesity had on her other impairments or work ability.[86] The Acting Commissioner objected, arguing the ALJ properly considered obesity and, at any rate, remand is not required because Lugo failed to demonstrate how consideration of her obesity would have changed the ALJ's decision.[87]

Judge O'Neill found remand unwarranted because Lugo did not explain how the ALJ's error could have made a difference.[88] Lugo "has not shown how consideration of her obesity expressly would 'affect the outcome of the case' in any more than a generalized way."[89] Plaintiff did "not direct the Court to any specific evidence in the record to show that [her severe

impairments] interact with her obesity so as to have any impact on her ability to function."[90] Lugo did not show remand would likely bring a different result.[91] "[T]he Court cannot remand the ALJ's decision based on the failure to confront evidence that does not exist."[92]

Relatedly, in *Suarez v. Astrue*, Judge O'Neill concluded the ALJ erred in failing to meaningfully analyze Suarez's severe impairment of obesity.[93] Judge O'Neill, however, found remand unnecessary because the evidence did not support Suarez's obesity—considered individually or cumulatively with other impairments—made her unable to work.[94] The only mention of Suarez's obesity related to an examination for snoring.[95] Remanding the case would not have changed the result.[96] Judge O'Neill contrasted this case from *Diaz*, where our Court of Appeals explained the claimant's obesity would seem to exacerbate her joint dysfunction as a matter of "common sense."[97] The exercise of common sense must be limited to the analysis of the record.[98] Otherwise, the ALJ risks improperly substituting his opinion for that of medical experts.[99] Because the only mention in the record evidence of Suarez's obesity related to a snoring examination, remand would not change the result.[100]

We similarly conclude ALJ Lash erred by failing to meaningfully discuss the cumulative effect of McPherson's obesity and her other impairments. The ALJ acknowledged obesity in general, when considered with other impairments, may constitute an impairment equaling the requirements of a listing.[101] ALJ Lash ended her analysis by stating "obesity has been considered in this analysis, but the record remains insufficient to establish that the claimant has an impairment(s) which meets or equals a listing."[102] This analysis is too sparse for us to meaningfully review.[103]

Even so, McPherson does not identify evidence showing the result would change on remand. McPherson identifies some record evidence demonstrating the interrelationship between

her obesity and other impairments, but ALJ Lash either found this evidence unsupported by the record as a whole or not credible. For example, McPherson testified her obesity exacerbates her knee and back pain.[104] ALJ Lash, however, determined McPherson's statements regarding "the intensity, persistence, and limiting effects of [her] symptoms" were not credible because they were internally inconsistent and inconsistent with the record.[105] McPherson also points to Dr. Zaydon's conclusion her morbid obesity affects her ability to crouch, crawl, and kneel.[106] ALJ Lash found these limitations unsupported by the physical examination findings and the record as a whole,[107] and McPherson does not argue the ALJ's determination is unsupported by substantial evidence. The remaining doctors' reports relied on by ALJ Lash mention McPherson's weight or obesity, but McPherson does not identify in these reports any meaningful analysis of the cumulative impact of her obesity and her other impairments.

All we are left with is McPherson's general statement obesity "may have an exacerbating effect on depression" and other impairments. McPherson "has not shown how consideration of her obesity expressly would 'affect the outcome of the case,' in any more than a generalized way."[108] "[T]he Court cannot remand the ALJ's decision based on the failure to confront evidence that does not exist."[109] Because McPherson fails to identify evidence which would have changed ALJ Lash's findings, remand is not warranted on this issue.

> **b. ALJ Lash's hypothetical to the vocational expert does not adequately account for Ms. McPherson's moderate deficiencies in concentration, persistence, and pace.**

Ms. McPherson argues ALJ Lash erred in relying upon the testimony of the vocational expert because the hypothetical questions failed to account for McPherson's "moderate" deficiencies in concentration, persistence, and pace.[110] The Acting Commissioner argues the

hypothetical adequately accounts for McPherson's deficiencies because it included limitations minimizing distractions.

"[A] hypothetical question posed to a vocational expert 'must reflect *all* of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence."[111] With regard to mental limitations, our Court of Appeals in *Ramirez* made clear the hypothetical must "specifically convey" the claimant's limitations.[112]

In *Ramirez*, the claimant suffered "often" from deficiencies in concentration, persistence, and pace.[113] In attempting to account for this limitation, the ALJ asked the vocational expert to restrict the occupations to those involving simple one to two-step tasks.[114] Our Court of Appeals remanded, finding the hypothetical did not adequately account for the claimant's mental limitation in concentration, persistence, and pace.[115] Circuit Judge Garth explained the importance of a pace limitation for someone capable of performing simple tasks: "Many employers require a certain output level from their employees over a given amount of time, and an individual with deficiencies in pace might be able to perform simple tasks, but not over an extended period of time."[116] Judge Garth concluded, "[T]he SSA's own ruling requires a 'more detailed assessment' of the claimant's mental limitations at step five of the disability analysis,"[117] and the ALJ's hypothetical failed to adequately convey the claimant's mental deficiencies with sufficient specificity.[118]

When our Court of Appeals decided *Ramirez*, the regulations used different terminology to rate the level of a claimant's mental impairment.[119] The term "moderate" did not exist in the regulations to describe the level of limitation in concentration, persistence or pace.[120] The terms

"[n]one, mild, moderate, marked, and extreme" replaced the terms "never, seldom, often, frequent, [and] constant."[121]

Following *Ramirez*, district courts in our Circuit have disagreed on whether inclusion of "simple, repetitive work" is insufficiently specific to account for a claimant's "moderate" impairment in concentration, persistence, and pace.[122] Our Court of Appeals explained in *Menkes*, a non-precedential opinion, "…performing a 'simple routine task' typically involves low stress level work that does not require maintaining sustained concentration."[123] In *Menkes*, the claimant suffered from "moderate" limitations in concentration, persistence, and pace.[124] The ALJ asked the vocational expert if a limitation to "simple routine tasks" would have any effect on the availability of unskilled occupations.[125] Our Court of Appeals explained the ALJ adequately accounted for the claimant's "moderate" limitations in concentration, persistence, and pace by restricting the type of work to "simple routine tasks."[126] Our Court of Appeals reached a similar conclusion in *McDonald*, another non-precedential case, finding the ALJ adequately accounted for the claimant's moderate limitation in concentration, persistence, and pace by limiting work to "simple, routine tasks" with limited exposure to noise extremes and bright or sudden light changes.[127]

There is a qualitative difference between one's ability to perform a task and one's ability to stay on task. For example, an individual with concentration, persistence, and pace deficits may have the level of skill required to perform simple, routine, and repetitive tasks on an assembly line, but she may not have the ability to maintain attention to the task over a prolonged period of time. The Commissioner's rulings support this distinction, noting "the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job.

A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job."[128]

The decisions of other courts of appeals highlight this distinction. The Court of Appeals for the Fourth Circuit explained, "[T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace."[129] The court concluded the limitation to "unskilled work" did not account for the claimant's "moderate" difficulties in maintaining her concentration, persistence, and pace.[130] Similarly, the Court of Appeals for the Eleventh Circuit "rejected the argument that an ALJ generally accounts for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work."[131] The Court of Appeals for the Eighth Circuit likewise held the limitation to "simple jobs" does not account for a claimant's "moderate" deficiencies in concentration, persistence, and pace.[132]

The Court of Appeals for the Seventh Circuit concluded the ALJ failed to account for the claimant's deficiencies in concentration, persistence, and pace by limiting the hypothetical to "simple, routine, and repetitive tasks."[133] The court explained "[t]hese terms refer to 'unskilled work,' which the regulations define as work that can be learned by demonstration in less than 30 days."[134] But "whether work can be learned in this manner is unrelated to the question of whether an individual with mental impairments—*e.g.*, with difficulties maintaining concentration, persistence, or pace—can perform such work."[135] The other limitations in the hypothetical also failed to account for the claimant's mental deficiencies.[136] The hypothetical limited the performance of work to that involving: 1) simple work related decisions; 2) few if any workplace changes; and 3) no more than occasional interaction with coworkers or

supervisors.[137] Limiting workplace changes and coworker interaction "deals largely with workplace adaptation, rather than concentration, pace, or persistence."[138]

ALJ Lash did not adequately account for McPherson's "moderate" deficiencies in concentration, persistence, and pace. The hypothetical included: 1) the performance of routine, repetitive tasks; 2) a low stress environment (defined as no frequent independent decision making required and no frequent changes in the work setting); and 3) no public interaction and occasional interaction with coworkers and supervisors. The limitation to "routine, repetitive tasks" accounts for the skill level required for the work, but not necessarily the level of concentration required for the work.[139] The limitations requiring no frequent changes in the work setting and limited workplace interaction deal "largely with workplace adaptation, rather than concentration, pace, or persistence."[140] The limitation on "frequent" independent decision making also does not adequately account for deficiencies in maintaining concentration, persistence, and pace, as this limitation mostly relates to the avoidance of stress associated with making independent decisions. Remand is required because ALJ Nash's hypothetical failed to adequately account for McPherson's moderate deficiencies in concentration, persistence, and pace.[141]

The Acting Commissioner argues there is no evidence McPherson had deficiencies in pace, making this case distinguishable from *Ramirez*, where the claimant had a pace issue.[142] This argument is unavailing because the ALJ's hypothetical still failed to account for Ms. McPherson's concentration deficiencies.

### III.    Conclusion

ALJ Lash erred by not considering the cumulative effect of McPherson's obesity on her other impairments. Remand is not required on this issue because McPherson does not identify

evidence of cumulative effects the ALJ failed to consider. The ALJ's hypothetical to the vocational expert did not adequately account for McPherson's deficiencies in concentration, persistence and pace. As the ALJ's conclusion as to the availability of jobs is not supported by substantial evidence, remand is required.

We need not address McPherson's final argument as to the lack of substantial evidence supporting the ALJ's finding of a significant number of jobs in the local and national economy. ALJ Lash based her finding on the vocational expert's conclusion McPherson could perform the work of a compact assembler, laminator, and small product assembler. Given the error in ALJ Lash's hypothetical, a corrected hypothetical may result in a different finding as to job availability.

---

[1] (R. 121–22.)

[2] (R. 37.)

[3] (R. 43–45.)

[4] (R. 58–59.)

[5] (R. 31–32.)

[6] (R. 65, 68.) The hypothetical person also had physical and environmental limitations not relevant to our decision: "[C]an lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk four hours; and sit six hours in a [sic] eight-hour work day; with occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; no climbing of ladders, ropes, or scaffolds; must avoid frequent exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dust, gases, and poor ventilation and hazards, including moving machinery and unprotected heights." (R. 65.)

[7] (R. 66–68.)

[8] (R. 22.)

[9] (R. 15.)

[10] (R. 16.)

[11] (*Id.*)

[12] (*Id.*)

[13] (R. 19.)

[14] (R. 17.)

[15] (R. 17.)

[16] (*Id.*)

[17] (R. 19.)

[18] (R. 117.)

[19] (R. 116.)

[20] (R. 21.)

[21] (R. 20.)

[22] (*Id.*)

[23] (R. 516.)

[24] (R. 21.)

[25] (R. 113.)

[26] (R. 21.)

[27] (ECF Doc. No. 11, at 6.)

[28] (*Id.* at 11.)

[29] (*Id.* at 16.)

[30] *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004).

[31] *Id.*

[32] *Id.*

[33] *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).

---

[34] *Ramirez*, 372 F.3d at 550.

[35] *Id.*

[36] *Id.*

[37] *Id.* at 555.

[38] *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting 42 U.S.C. § 405(g)).

[39] *Id.* (citing *Craigie v. Bowen*, 835 F.2d 56, 57 (3d Cir. 1987)).

[40] *Id.* (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

[41] *Id.* (quoting *Rutherford*, 399 F.3d at 552).

[42] *Id.* (citing *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir.1999)).

[43] (ECF Doc. No. 11, at p. 8.)

[44] *Titles II & Xvi: Evaluation of Obesity*, SSR 02-1p, 2000 WL 628049, at *1 (Sept. 12, 2002).

[45] *Id.* at *3.

[46] *Id.* at *3, 5.

[47] *Id.* at *3.

[48] *Rivera v. Comm'r of Soc. Sec.*, 320 F. App'x 128, 130 (3d Cir. 2009).

[49] *Diaz v.* Comm'r *of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citing *Burnett*, 220 F.3d 112, 119 (3d Cir. 2000)).

[50] *Id.* at 502.

[51] *Id.*

[52] *Id.* at 504.

[53] *Id.* at 503.

[54] *Id.* at 504.

[55] *Id.*

[56] *Id.*

[57] *Id.* (citing *Burnett*, 220 F.3d 112, 119 (3d Cir. 2000)).

[58] *Page v. Colvin*, No. 14-0295, 2014 WL 4925186, at *4 (W.D. Pa. Sept. 30, 2014).

[59] *Id.* at *5.

[60] *Id.*

[61] *Ellis v. Astrue*, No. 09-1212, 2010 WL 1817246, at *2, 5 (E.D. Pa. Apr. 30, 2010).

[62] *Id.* at *5

[63] *Id.*

[64] *Jainlett v. Colvin*, No. 15-4172, ECF Doc. No. 17, at 4 (E.D. Pa. June 30, 2016) *approved and adopted*, ECF Doc. No. 19  (E.D. Pa. July 15, 2016).

[65] *Id.*

[66] *Id.*

[67] *Id.* at 7 (brackets omitted) (citing *Diaz*, 577 F.3d at 504).

[68] *Brown v. Astrue*, 789 F. Supp. 2d 470, 483–84 (D. Del. 2011).

[69] *Id.* at 483.

[70] *Id.* at 484.

[71] *Id.*

[72] *Id.*

[73] *Id.*

[74] *Neff v. Astrue*, 875 F. Supp. 2d 411, 422 (D. Del. 2012).

[75] *Id.* at 423.

[76] *Id.*

[77] *Id.*

[78] *Id.*

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] *Lugo v. Colvin*, No. 13-7598, 2016 WL 2910104, at *1 (E.D. Pa. May 19, 2016).

[83] *Id.*

[84] *Id.* at *2.

[85] *Id.*

[86] *Id.*

[87] *Id.*

[88] *Id.* at *4.

[89] *Id.* at *5 (quoting *Hankins v. Colvin*, No. 13-4929, 2015 WL 211870, at *4 (E.D. Pa. May 6, 2015)).

[90] *Lugo*, No. 13-7598, 2016 WL 2910104, at *5.

[91] *Id.*

[92] *Id.* (quoting *Neff*, 875 F. Supp. 2d at 423).

[93] *Suarez v. Astrue*, 996 F. Supp. 2d 327, 332 (E.D. Pa. 2013).

[94] *Id.*

[95] *Id.*

[96] *Id.* at 333.

[97] *Id.* at 332.

[98] *Id.*

[99] *Id.* (citing *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000)).

[100] *Id.* at 332–33.

[101] (R. 16.)

[102] (R. 16.)

[103] *Diaz*, 577 F.3d at 504 (citing *Burnett*, 220 F.3d at 119).

[104] (R. 31–32.)

[105] (R. 20.)

[106] (R. 116.)

[107] (R. 21.)

[108] *Lugo*, No. 13-7598, 2016 WL 2910104, at *5 (quoting *Hankins v. Colvin*, No. 13-4929, 2015 WL 211870, at *4 (E.D. Pa. May 6, 2015)).

[109] *Id.* (quoting *Neff*, 875 F. Supp. 2d at 423)

[110] (ECF Doc. No. 11, at p. 11.)

[111] *Ramirez*, 372 F.3d at 552 (quoting *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987)).

[112] *Id.*

[113] *Id.* at 552.

[114] *Id.*

[115] *Id.* at 555.

[116] *Id.* at 554.

[117] *Id.* at 555 (quoting SSR 96–8p (July 2, 1996)).

[118] *Id.*

[119] *Plank v. Colvin*, No. 12-4144, 2013 WL 6388486, at *10 (E.D. Pa. Dec. 6, 2013).

[120] *Id.*

---

[121] *See* 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4); *Debias v. Astrue*, No. 11-3545, 2012 WL 2120451, at *5 (E.D. Pa. June 12, 2012).

[122] Compare *Shaffer v. Colvin*, No. 13-925, 2014 WL 4925067, at *5 (W.D. Pa. Sept. 30, 2014) ("[C]ase law in this circuit makes clear that a restriction limiting an individual, *e.g.,* to "simple, routine tasks" or "unskilled work," is sufficient to accommodate *moderate* limitations in concentration, persistence and pace."), *with Plank v. Colvin*, No. 12-4144, 2013 WL 6388486, at *10 (E.D. Pa. Dec. 6, 2013) ("Although the ALJ recognized that Plaintiff has moderate difficulty in maintaining concentration, persistence or pace, he omitted this deficit from the RFC, and the hypothetical question to the VE. Judges in this district have consistently found that such an omission constitutes reversible error.") (citations omitted).

[123] *Menkes v. Astrue*, 262 F. App'x 410, 412 (3d Cir. 2008).

[124] *Id.*

[125] *Id.*

[126] *Id.*

[127] *McDonald v. Astrue*, 293 F. App'x 941, 946 (3d Cir. 2008).

[128] *Titles II & Xvi: Capability to Do Other Work-Themedical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments*, SSR 85-15 (S.S.A. 1985).

[129] *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015).

[130] *Id.*

[131] *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).

[132] *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996).

[133] *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015).

[134] *Id.* (citing 20 C.F.R. §§ 404.1568, 404.1520).

[135] *Id.*

[136] *Id.* at 815.

[137] *Id.*

[138] *Id.*

[139] *See id.* at 814.

[140] *Id.* at 815.

[141] *Ramirez*, 372 F.3d at 555.

[142] (ECF Doc. No. 14, at p. 12.)